UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM FIRE AND
CASUALTY COMPANY,

    Plaintiffs,

v.

Case No. 17-11675
HON. DENISE PAGE HOOD

LISA BISHOP, DORIS RESETAR,
PATRICE McGRATH, and
CAROL McGRATH,

    Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S
MOTION FOR DECLARATORY JUDGMENT [#22]**

**I. INTRODUCTION**

Plaintiff has filed a Motion for Declaratory Judgment [Dkt. No. 22] asking the Court to hold that Plaintiff is not liable to Defendants pursuant to insurance policies Plaintiff issued to Defendants. Defendants have filed a joint response, to which Plaintiff replied. The Court, having concluded that the decision process would not be aided by oral argument, previously ordered that the Motion be resolved on the briefs submitted by the parties. E.D. Mich. L.R. 7.1(f)(2). [Dkt. No. 26] For the reasons that follow, Plaintiff's Motion for Declaratory Judgment is granted.

**II. BACKGROUND**

On February 15, 2017, Michael O'Shea and Sandra O'Shea (the "O'Sheas") filed suit against Defendants Lisa Bishop ("Bishop"), Doris Resetar ("Resetar"), Patrice McGrath and Carol McGrath (the "McCraths"), and others in Oakland County Circuit Court (the "Underlying Suit"). The Underlying Suit was then removed to this Court. *See* Case No. 2:17-cv-116891. The complaint in the Underlying Suit (the "Underlying Complaint") includes four counts against each of Bishop, Resetar, and the McGraths (collectively, "Defendants"): (a) Count II – Abuse of Process; (b) Count III – Intentional Infliction of Emotional Distress; (c) Count IV – Preliminary/Permanent Injunction; and (d) Count VIII – Malicious Prosecution.

The factual foundation of the Underlying Complaint is the O'Sheas' unhappiness with alleged actions or complaints to the Northville Police Department by the defendants in the underlying suit (including the four Defendants in this case) regarding the O'Sheas' dog running free in the common areas of a condominium complex. As the Underlying Complaint states, in part: "This action centers around a series of actions taken by the individual Defendants, all of whom reside in the same condominium complex/neighborhood in which the Plaintiffs used to reside, designed to intimidate, harass, physically harm and/or inflict severe emotional distress and pain upon the [O'Sheas]." Dkt. No. 1, Ex. C at ¶15.

In Count II (Abuse of Process) of the Underlying Complaint, the O'Sheas allege

that: (1) "all of the [d]efendants came to an agreement and formed and carried out a plan to accomplish an unlawful purpose so as to damage the [O'Sheas];" and (2) the defendants made police reports with the "ulterior motive to harass, intimidate, harm and cause [the O'Sheas] to suffer emotional distress." Dkt. No. 22, Ex. A at ¶¶ 25, 27. The same allegations are made in Count III (Intentional Infliction of Emotional Distress), *see* Dkt. No. 22, Ex. A at ¶¶ 32, 34, together with an allegation that "the [d]efendants' [sic] committed these acts with the intent to cause harm to the [O'Sheas]." *Id.* at ¶ 38. In Count VIII (Malicious Prosecution), the O'Sheas allege that the defendants initiated allegations of "criminal and quasi-criminal activity" against the O'Sheas for the "improper and personal reasons meant to vex, harm, harass, and injure the [O'Sheas]." Dkt. No. 22, Ex. A at ¶¶61-62.[1]

Prior to the events that are the subject of the Underlying Suit, Plaintiff issued five insurance policies, including three separate Condominium Unitowners insurance policies (each, a "Primary Policy") to: (a) Resetar (Policy No. 82-BU-Z242-1, for the policy periods of March 4, 2011 to March 4, 2018), *see* Dkt. No. 22, Ex. B at Pg ID 295-329, 365-98; (b) the McGraths (Policy No. 82-BV-R532-0, for the policy periods of May 2, 2015 to May 2, 2018), *id.* at Pg ID 330-43, 365-98; and (c) Bishop (Policy

---

[1]Count IV, in which the O'Sheas seek injunctive relief, is addressed in Section III.D.3.

No. 22-BK-X223-5, for the policy periods of March 10, 2015 to March 10, 2018), *id.* at Pg ID 344-98.  In addition to the Primary Policies, Plaintiff also issued umbrella insurance policies (each, an "Umbrella Policy") to: (1) the McGraths (Policy No. 82-BV-R486-1, for the policy periods of May 2, 2015 to May 2, 2018), *id.* at 401-25; and (2) Bishop (policy and policy number not provided).[2]  Relevant provisions of the Primary Policy and Umbrella Policy are set forth below.

### III. APPLICABLE LAW and ANALYSIS

#### A. Jurisdiction

A district court has the discretion whether to exercise jurisdiction under the Declaratory Judgment Act. 28 U.S.C. § 2201(a); *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 494 (1942).  Defendants do not contest the Court's jurisdiction over this matter, Dkt. No. 24, PgID 533 (at n.1), and the Court finds that a consideration of the relevant factors weighs in favor of exercising jurisdiction under the Declaratory Judgment Act. *See Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 813 (6th Cir. 2004).

#### B. Contract Interpretation

---

[2] Although the Bishop Umbrella Policy was not provided to the Court, there is no indication that the terms of the Bishop Umbrella Policy differ from the McGraths' Umbrella Policy.  For purposes of this Order, the Court assumes that the relevant terms of the Bishop Umbrella Policy are the same as the relevant terms of the McGraths' Umbrella Policy.

The rules of construction for insurance contracts are the same as those for any other written contract. *Comerica Bank v. Lexington Ins. Co.,* 3 F.3d 939, 942 (6th Cir. 1993). First, the Court must determine whether the contract language at issue is ambiguous or unambiguous. Second, the Court must construe the contract. The question of whether a contract is ambiguous is a question of law for the Court. *Mayer v. Auto-Owners Ins. Co.,* 127 Mich.App. 23, 27 (1983). Construction of a contract, whether it is ambiguous or unambiguous, also is a question of law for the Court. *Fragner v. American Community Mut. Ins. Co.,* 199 Mich.App. 537, 540 (1993). In this case, neither party argues that any of the relevant terms of the Primary Policy or the Umbrella Policy are ambiguous, and the Court finds that there are no ambiguous relevant terms in the Primary Policy or the Umbrella Policy.

There are specific rules of construction a court must follow construing an insurance contract. Ambiguous terms in an insurance policy are construed in favor of the insured, *Arco Indus. Corp. v. Am. Motorists Ins.,* 448 Mich. 395, 403 (1995), and it is the insurer's responsibility to clearly express any limits on its insurance coverage. *Auto Club Ins. Ass'n v. DeLaGarza,* 433 Mich. 208, 214 (1989). Exclusionary clauses in insurance contracts are to be strictly and narrowly construed. *Farm Bureau Mut. Ins. Co. v. Stark,* 437 Mich. 175, 181 (1991).

An insurer has a duty to defend its insured if the allegations of the underlying

suit arguably fall within the coverage of the policy. *GAF Sales & Service, Inc. v. Hastings Mut. Ins. Co.,* 224 Mich.App. 259, 261 (1997). This duty is not limited to meritorious suits and may even extend to actions which are groundless, false or fraudulent, so long as the allegations against the insured even arguably come within the policy coverage. An insurer has a duty to defend, despite theories of liability asserted against any insured which are not covered under the policy, if there are any theories of recovery that fall within the policy period. *Dochod v. Central Mut. Ins. Co.,* 81 Mich.App. 63, 66 (1978).

The insurer's duty to defend depends upon the allegations in the complaint against the insured. *Smorch v. Auto Club Group Ins. Co.*, 179 Mich.App. 125, 128 (1989). The insurer has a duty to look behind the parties' allegations to analyze whether coverage is possible. *Shepard Marine Constr. Co. v. Maryland Cas. Co.,* 73 Mich.App. 62, 65 (1976). In a case of doubt as to whether or not the complaint against the insured alleges a liability of the insurer under the policy, the doubt must be resolved in the insured's favor. *Detroit Edison Co. v. Michigan Mut. Ins. Co.*, 102 Mich.App. 136, 142 (1980); 14 *Couch on Insurance 2d*, § 51:45, at 538. It is settled law in Michigan that an insurer's duty to defend is broader than its duty to indemnify. *Auto-Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15 (1994).

**C.  Relevant Policy Provisions**

*1. Primary Policy*

Each Primary Policy includes a number of relevant terms and provisions.

**SECTION II- LIABILITY COVERAGES**

**COVERAGE L - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from an **occurrence**, equals our limit of liability.

Dkt. No. 22, Ex. B at PgID 381 (bold in original). The Primary Policy provides that "bodily injury" means "physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom." *Id.* at PgID 367. "Bodily injury" does not include:

  a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;
  b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or
  c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

7

*Id.* (bold in original).

The Primary Policy provides that "'**property damage**' means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**." *Id.* at PgID 369 (bold in original). The Primary Policy also provides that:

> "**[O]ccurrence**," when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:
>
> a.     **bodily injury**; or
> b.     **property damage**;
>
> during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

*Id.* at PgID 368-69 (bold in original).

*2.     Umbrella Policy*

The Umbrella Policies issued to the McGraths and Bishop provide, in relevant part:

**COVERAGE L - PERSONAL LIABILITY**

If a claim is made or suit is brought against an **insured** for damages because of **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured** the damages that exceed the **retained limit**. The most **we** will pay for such **loss** is the Coverage Limit of Liability, as shown on the declarations page, regardless of the number **insureds** who may be liable, claims made, or persons injured.

8

**Defense**

> If a suit is brought against an **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the **insured** at **our** expense by counsel of **our** choice when the basis for the suit is a **loss** that is not covered by any other insurance policy but is covered by this policy. **We** have no duty to defend any claim or suit after **we** tender, deposit in court, or pay the amount due under this policy.

Dkt. No. 22, Ex. C at PgID 417.

The Umbrella Policy defines "loss" as:

a. an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **loss**; or

b. the commission of an offense which first results in **personal injury** during the policy period. A series of similar or related offenses is considered to be one **loss**.

*Id.* at PgID 413 (bold in original).

The Umbrella Policy provides that "bodily injury" means "physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom." *Id.* at PgID 412. For purposes of the Umbrella Policy, "bodily injury" does not include:

a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;
b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person;

9

c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person; or
d. **personal injury**.

*Id.* at PgID 412-13 (bold in original). "Property damage" is defined in the Umbrella Policy as:

> "**[P]roperty damage**" means physical damage to or destruction of tangible property, including the loss of use of such property. Tangible property does not include computer programs or data or the reconstruction of computer programs or data. Theft or conversion of property by an **insured** is not **property damage**.

*Id.* at PgID 414 (bold in original). The Umbrella Policy also includes the following definition of "personal injury:"

> "**[P]ersonal Injury**" means injury other than **bodily injury** arising out of one or more of the following offenses:
>
> a. false arrest, false imprisonment, wrongful eviction, wrongful detention of a person.
> b. abuse of process, malicious prosecution;
> c. libel, slander, defamation of character; or
> d. invasion of a person's right of private occupancy by physically entering into that person's personal residence.

*Id.* at Pg ID 413-14 (bold in original).

Finally, Exclusion 17 under the Umbrella Policy provides that "[t]here is no coverage under this policy for any: . . . **personal injury** when the **insured** acts with specific intent to cause any harm[.]" Dkt. No. 22, Ex. C at PgID 418, 420 (bold in original).

**D. Analysis**

*1. Primary Policy*

Although it is well-established that an insurer's duty to defend is broader than its duty to indemnify, *Auto-Owners Ins. Co. v. City of Clare*, 446 Mich. 1, 15 (1994), it is equally well-established that a court must give the terms of an insurance policy their plain meaning and may not "create an ambiguity where none exists." *Heniser v. Frankenmuth Ins. Co.*, 449 Mich. 155, 161 (1995). "[T]he terms of an insurance policy, and not the language in the pleadings, trigger an insurer's duty to defend." *State Farm Fire & Cas. Co. v. Stone*, 2017 U.S. Dist. LEXIS 110283, at *9 (E.D. Mich. July 17, 2017) (citation omitted). As stated in *Stone*:

> [B]ecause the policy requires an insured to have caused physical injury in order to trigger Plaintiff's duty to defend on a related lawsuit, and [the underlying plaintiff's] claims are for emotional injuries only, no reasonable jury could conclude that [the insured] is entitled to a defense from Plaintiff against [the underlying plaintiff's] defamation lawsuit. Plaintiff State Farm Fire and Casualty Company, therefore, does not have a duty to continue defending, and has no duty to indemnify, [the insureds] against the allegations brought against them by [the underlying plaintiffs] . . .

*Id.* at *10.

Pursuant to the Primary Policy provisions, Plaintiff does not have a duty to defend or indemnify Defendants in the Underlying Suit unless the "occurrence" upon which the claim against the insured (Defendants) is based seeks recovery "for

11

damages because of **bodily injury** or **property damage** to which this coverage applies, . . ." *See* Dkt. No. 22, Ex. B at PgID 381 (Primary Policy, Section II - Liability Coverages, Coverage L - Personal Liability); *Stone*, 2017 U.S. Dist. LEXIS 110283, at \*\*9-10. It is undisputed that, in the Underlying Complaint, the O'Sheas did not allege that they suffered any injury or damage[3] as a result of Defendants' actions that could fall within the Primary Policy definitions of "bodily injury" or "property damage" ("physical injury"). So, even if Defendants were determined to have acted accidentally,[4] Plaintiff has no duty under the Primary Policy to defend or indemnify Defendants because an "occurrence" also requires that the accident result in "bodily injury" or "property damage." *See Stone,* 2017 U.S. Dist. LEXIS 110283, at \*\*9-10.

For those reasons, the Court concludes that there is no genuine dispute of

---

[3]Defendants' failure to address in their response brief the issue of whether "bodily injury" or "property damage" was alleged in the Underlying Complaint also could be construed as a waiver by Defendants. *See, e.g., Jones v. Kimberly-Clark Corp.*, 2000 U.S. App. LEXIS 30249, at \*\*7-8 (6th Cir. Nov. 28, 2000); *Matsushita*, 475 U.S. at 587.

[4]With respect to the Primary Policy, the Court finds that it is not necessary to make a determination whether the O'Sheas could prevail on any of Counts II, III, or VIII of the Underlying Complaint based on accidental or reckless behavior by any Defendant because there can be no "occurrence" unless there also was "bodily injury" or "property damage," neither of which is alleged in the Underlying Complaint.

material fact that Defendants have no right pursuant to the Primary Policy to indemnification or a defense with respect to the claims in Counts II, III, and VIII of the Underlying Complaint. Plaintiff is entitled to a declaratory judgment that it has no duty to defend or indemnify Defendants with respect to the Primary Policies.

  2.  *Umbrella Policy*

Defendants do not contest Plaintiff's argument that Plaintiff cannot be liable for a "loss" based on "bodily injury" or "property damage." For the reasons stated above, the Court holds that there is no "loss" pursuant to part a. of the definition of "loss" in the Umbrella Policy, which requires a bodily injury or property damage. Defendants argue that there is a genuine dispute of material fact whether there was a "loss" pursuant to part b. of the definition of "loss" in the Umbrella Policy, which requires a "personal injury." Defendants accurately note that "personal injury" includes an injury "other than bodily injury" that arises out of the "[a]buse of process, malicious prosecution[.]" Dkt. No. 22, Ex. C at PgID 413. Plaintiff does not dispute that argument, but Plaintiff contends that coverage for a "loss" based on personal injury is barred by one of the Umbrella Policy Exclusions. Exclusion 17 under the Umbrella Policy provides that "[t]here is no coverage under this policy for any: . . . **personal injury** when the **insured** acts with specific intent to cause any harm[.]" Dkt. No. 22, Ex. C at PgID 418, 420 (bold in original).

13

Defendants argue that there is no evidence in the Underlying Suit that any Defendant acted with specific intent to cause any harm to the O'Sheas. Defendants contend that, because Defendants' only alleged actions were contacting and speaking to the Northville Police Department or its officers about a loose dog in the condominium complex's common areas, it was not a natural, foreseeable, and anticipated (expected) result that the O'Sheas would suffer a personal injury (or bodily injury) as a result of Defendants' actions. Defendants assert that the Court must look to the cause of the alleged injury to determine whether coverage exists, *State Farm v. Basham*, 206 Mich.App. 240 (1994), because coverage for damages is precluded only if the damages should reasonably have been expected due to the direct risk of harm created by the Defendants' intentional actions. *Auto Club Ins. Co. v. Burchell*, 249 Mich.App. 468, 482-83 (2001). Defendants propose that, until the O'Sheas are deposed, there is little known about: (a) the O'Sheas' alleged bodily injuries and personal injuries; and (b) whether any of these alleged injuries were expected as a natural, foreseeable, and anticipated result of any alleged intentional act by the McGraths or Bishop.

Plaintiff argues that all of the alleged acts (abuse of process, intentional infliction of emotional distress, malicious prosecution) require a showing of intent, such that they could not have been accidental, which is necessary for there to be a

14

"loss" under the Umbrella Policy (or an "occurrence" under the Primary Policy). Plaintiff relies on a number of allegations in the Underlying Complaint, especially allegations in Count II, Count III, and Count VIII. Plaintiff asserts, and the Court agrees, that those allegations require a finding that Defendants acted with intent to injure the O'Sheas.

In Count II, the O'Sheas allege that the underlying defendants (including Defendants) "came to an agreement and carried out a plan to accomplish an unlawful purpose . . . to damage the [O'Sheas]," making police reports with the "ulterior motive to harass . . . harm and cause [the O'Sheas] to suffer emotional distress." Dkt. No. 22, Ex. A at ¶¶ 25, 27. The Court finds that alleging that Defendants "came to an agreement . . . to accomplish an unlawful purpose" evidences intent, not recklessness or negligence. Having the "ulterior motive" to take action, especially to harass, harm and cause emotional distress, also shows an intent to harm.

In Count III, the O'Sheas make the same allegations made in Count II and discussed in the preceding paragraph. *See* Dkt. No. 22, Ex. A at ¶¶ 32, 34. Those allegations alone demonstrate that the O'Sheas' Intentional Infliction of Emotional Distress claim was based on the intentional acts of Defendants (and others). Neither of those allegations allows for a finding of liability based on recklessness or negligence by Defendants, even though a claim for intentional infliction of emotional

distress could survive upon a showing of recklessness. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 601 (1985); *Hilden v. Hurley Med. Ctr.*, 831 F.Supp.2d 1024, 1046 (E.D. Mich. 2011) (citation omitted) (the second element of a claim for intentional infliction of emotional distress requires Plaintiff to prove "intent or recklessness"). That is particularly true because the O'Sheas also alleged in Count III that "the Defendants' [sic] committed these acts with the intent to cause harm to the Plaintiffs." *Id.* at ¶ 38. The Court finds that the O'Sheas and the Underlying Complaint could not have alleged any more clearly that the acts Defendants committed were conducted "**with the intent to cause harm** to the [O'Sheas]." *Id.* (emphasis added).

In Count VIII, the O'Sheas allege that the defendants (including Defendants) in the Underlying Suit took "criminal and quasi-criminal activity" against the O'Sheas for the "improper and personal reasons meant to vex, harm, harass, and injure the Plaintiffs." Dkt. No. 22, Ex. A at ¶¶61-62. The Court notes that criminal activity generally requires intentional actions. The Court also finds that the allegation that Defendants had "improper reasons **meant** to . . . harm and injure" evidences intentional – not reckless or negligent – actions. *See* [www.merriam-webster.com/dictionary/meant,](www.merriam-webster.com/dictionary/meant) September 24, 2018 ("mean" ("meant") is defined as, among other things, "to have in the mind as a purpose: INTEND").

16

The Court further notes that the "General Allegations and Factual Background" portion of the Underlying Complaint includes allegations that demonstrate that the claims against Defendants are based on Defendants' intentional acts. As Paragraph 15 of the Underlying Complaint states: "**This action centers around a series of actions taken by the individual Defendants**, all of whom reside in the same condominium complex/neighborhood in which the Plaintiffs used to reside, **designed to intimidate, harass, physically harm and/or inflict severe emotional distress and pain upon the [O'Sheas.]**" Dkt. No. 1, Ex. C at ¶15 (emphasis added).

The Court finds that the O'Sheas can only recover against Defendants in Counts II, III, and VIII of the Underlying Suit if the factfinder determines that a personal injury was caused by Defendants "act[ing] with specific intent to cause . . . harm." Dkt. No. 22, Ex. C at PgID 420. As those allegations will require a showing of intentional acts by Defendants, the Court holds that Exclusion 17 applies to bar coverage for personal injury under the Umbrella Policies applicable to this case. Plaintiff is entitled to a declaratory judgment of no duty to defend or indemnify Defendants with respect to the Umbrella Policies.

3. *Injunctive Relief (Count IV)*

Plaintiff argues, and Defendants do not contest, that Plaintiff has no duty to defend or indemnify Defendants with respect to the claim for injunctive relief in

Count IV of the Underlying Complaint. Both the Primary Policy and the Umbrella Policy offer coverage for damages to which Defendants (as insureds) might be subject pursuant to the terms of those policies. As the Michigan Court of Appeals has recognized, an insured does not have a duty to defend or indemnify an insured in an underlying case where injunctive relief was sought. *See, e.g., Jones v. Farm Bureau Mut. Ins. Co.*, 172 Mich.App. 24, 29 (1988). The relevant Primary Policy and Umbrella Policy terms provide that: (a) Plaintiff will pay on "liability for damages for which the insured is legally liable;" (b) "we will pay on behalf of the insured, the damages . . . ;" and (c) "[i]f a suit is brought against an insured for damages because of a loss to which this policy applies, we will provide a defense to the insured . . ." Dkt. No. 22, Ex. B at PgID 381, Ex. C at PgID 417. There are no provisions under the Primary Policy or the Umbrella Policy that extend coverage to an injunctive action or claims for injunctive relief. The Court holds – and will enter a declaratory judgment – that Plaintiff has no duty to indemnify or defend against Plaintiff's injunctive relief claim (Count IV).

**IV. CONCLUSION**

For the reasons stated above,

IT IS ORDERED that Plaintiff's Motion for Declaratory Judgment [Dkt. No. 22] is **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff is entitled to a declaratory judgment that Plaintiff has no duty to defend or indemnify Defendants under the Primary Policy and/or the Umbrella Policy with respect to the Underlying Suit.

Judgment shall be entered accordingly.

IT IS ORDERED.

S/Denise Page Hood
Denise Page Hood
Chief Judge, United States District Court

Dated: September 28, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2018, by electronic and/or ordinary mail.

S/LaShawn R. Saulsberry
Case Manager